# Grievance Response Report

| | | | | |
|---|---|---|---|---|
| **PersonID:** | 000176943 | | **Type:** | Inmate |
| **Name:** | Christopher Reilly | | **Location:** | A3-015 |
| **Coordinator:** | Erica Rivera-Suttles | 007829 | **Date Received:** | 9/23/2025 |
| **Responder:** | Erin Lajeunesse | 004077 | **Date Responded:** | 9/23/2025 |

## Nature of Complaint

☐ GRIEVANCE ☐ APPEAL ☐ INMATE ☐ RESIDENT ☐ CLIENT

Name: C. REILLY      Location: A3      Person #: 176943

Did you try to informally resolve your problem with staff? ☐ YES ☐ NO

If yes, list the name of the staff person you talked to: LIZZIE GALLAGH, MEDICAL STAFF, DANIEL, RN, MARISOL, N.P.

NATURE OF COMPLAINT (be brief and specific):

THIS IS A NEW ENVIRONMENT FOR ME. I HAD BEEN PRESCRIBED 2MG CLONAZEPAM (KLONOPIN) BID FOR GENERALIZED ANXIETY DISORDER INCLUDING AGORAPHOBIA BEFORE INTAKE JUNE 19. IT WAS NEVER DISPENSED AND WAS SEVERED COLD TURKEY. TO TAKE THE EDGE OFF, I NEED TO BE PUT BACK ON THIS LAWFUL PRESCRIBED MEDICATION AT THE SAME DOSE. I HAD TAKEN IT FOR YEARS PRIOR, PRESCRIBED BY ANNMARIE BERNIER, APRN, W. HARTFORD, CONN.

Signature: CRell.     Date: SEP 19, 2025

—DO NOT WRITE BELOW THIS LINE—

Received by Grievance Coordinator: _____ on _____

## Response

[handwritten margin note: SCHEDULE IV]

This class of medication is not something that is able to be offered. Anxiety is treated long-term by antidepressants (effective treatment for anxiety) and managing symptoms with coping skills.

You met with the prescriber on 8/15 and indicated the current regimen was therapeutic. You can discuss any current symptoms at your next med clinic appointment to discuss any other options.

You are encouraged to request respites to the ESU for additional support if needed. The MH Counselors can work with you to identify stressors and practicing skills to reduce anxiety.

# Hampden County Sheriff's Department

## GRIEVANCE / APPEAL FORM

9/2

(Check One)
☒ GRIEVANCE   ☐ APPEAL

(Check One)
☒ INMATE   ☐ RESIDENT   ☐ CLIENT

Name: REILLY   Location: A3   Person #: 176943

Did you try to informally resolve your problem with staff? ☒ YES ☐ NO

If yes, list the name of the staff person you talked to: LIZZIE, LCSW

**NATURE OF COMPLAINT** (be brief and specific):

PLEASE RESUME DISPENSING 2MG CLONAZEPAM BID TO MY DAILY PSYCHOTROPIC REGIMEN. THIS WAS ABRUPTLY DISCONTINUED ON ADMITTANCE RESULTING IN MONTHS OF CRUEL AND UNUSUAL WITHDRAWAL SYMPTOMS INCLUDING SWEATING, FATIGUE, PANIC ATTACKS, NERVOUSNESS, AND IRRITABILITY. ESPECIALLY ON ENTERING A NEW PLACE FOR ME, THE DECISION BY MEDICAL OFFICIALS EMPLOYED BY THE HAMPDEN COUNTY SHERIFF'S OFFICE TO CEASE THIS SCHEDULE IV MEDICATION HAS MADE THE ADJUSTMENT EXTRAORDINARILY DIFFICULT. THE FACT IT WAS PRESCRIBED TO ME BY A PROVIDER FOR YEARS MAKES THE DECISION APPEAR BAFFLING.

Signature: CReilly    Date: SEP. 2, 2025

---DO NOT WRITE BELOW THIS LINE---

Received by Grievance Coordinator: _____ on _____
                                    Name              Date

**STAFF WRITTEN RESPONSE**

Please send the original copy to the Unit Grievance Coordinator:

_____
_____
_____
_____
_____
_____
_____

Denied grievances may be appealed and addressed to the **Area Superintendent/designee** within seven (7) days for inmates/residents, ten (10) days for clients.

Responding Staff Signature/ID#: _____ / _____ Date: _____

**HCHOC-0085 (2-Part Form)**: Original-Case file   Yellow Copy-Grievant

Grievance Policy: MI-3.5.2/WCC 3.3.3/PRC 3.4.2/Mill St. 4.1.6 /S35              Rev 02/28/2019

FRI, SEP 19, 2025

# Hampden County Sheriff's Department

## GRIEVANCE / APPEAL FORM

LIZZIE DAVIS NEE GALLAGHER, LMHC
KAREN DONELSON, LMHC, CLINICAL SUPERVISOR

(Check One)
☑ GRIEVANCE  ☐ APPEAL

(Check One)
☐ INMATE  ☐ RESIDENT  ☐ CLIENT

Name: C. REILLY     Location: A3     Person #: 176943

Did you try to informally resolve your problem with staff? ☐ YES ☐ NO

If yes, list the name of the staff person you talked to: LIZZIE GALLAGHER
MEDICAL STAFF
DANIEL, RN
MARISOL, N.P.

**NATURE OF COMPLAINT** (be brief and specific):

THIS IS A NEW ENVIRONMENT FOR ME. I HAD BEEN PRESCRIBED 2MG CLONAZEPAM (KLONOPIN) BID FOR GENERALIZED ANXIETY DISORDER INCLUDING AGORAPHOBIA BEFORE INTAKE JUNE 19. IT WAS NEVER DISPENSED AND WAS SEVERED COLD TURKEY. TO TAKE THE EDGE OFF, I NEED TO BE PUT BACK ON THIS LAWFUL PRESCRIBED MEDICATION AT THE SAME DOSE. I HAD TAKEN IT FOR YEARS PRIOR, PRESCRIBED BY ANNMARIE BERNIER, APRN, W. HARTFORD, CONN.

Signature: C Reilly     Date: Sep. 19, 2025

---- DO NOT WRITE BELOW THIS LINE ----

Received by Grievance Coordinator: _____ on _____
                                    Name              Date

### STAFF WRITTEN RESPONSE

Please send the original copy to the Unit Grievance Coordinator:

_____
_____
_____
_____
_____
_____
_____

Denied grievances may be appealed and addressed to the Area Superintendent/designee within seven (7) days for inmates/residents, ten (10) days for clients.

Responding Staff Signature/ID#: _____ / ____ Date: ____

HCHOC-0085 (2-Part Form): Original-Case file    Yellow Copy-Grievant

Grievance Policy: MI-3.5.2/WCC 3.3.3/PRC 3.4.2/Mill St. 4.1.6 /S35

Rev 02/28/2019

# Hampden County Sheriff's Department

## GRIEVANCE / APPEAL FORM

(Check One)
[✓] GRIEVANCE   [ ] APPEAL

(Check One)
[✓] INMATE   [ ] RESIDENT   [ ] CLIENT

Name: CHRIS REILLY   Location: A3   Person #: 176943

Did you try to informally resolve your problem with staff? [✓] YES [ ] NO

If yes, list the name of the staff person you ~~talked~~ WROTE to: ERIN LAJEUNESSE

**NATURE OF COMPLAINT** (be brief and specific):

In reply to grievance response cop-out dated Oct. 6, 2025, and received today: Again, completely unacceptable. You write, "As previously informed, it is not practice to start this medication." As previously demanded: show me the policy where you can pick and choose to play God with inmates' disorders and stop their prescribed medications like you're a king. You have been given more than ample time to show such a policy. Clearly, none exists, and you fly by the seat of your pants, to the detriment of patients who can use Schedule IV medications responsibly. "Respites" are not compensation for your neglectful failure to dispense important drugs to anxiety sufferers in a highly stressful environment.

Signature: CReilly   Date: OCT. 09, 2025

──────── DO NOT WRITE BELOW THIS LINE ────────

Received by Grievance Coordinator: _____ on _____
                                         Name                    Date

### STAFF WRITTEN RESPONSE

Please send the original copy to the Unit Grievance Coordinator:

Further, in re Aug. 15, I had been mistakenly taken into solitary confinement after having been victimized by a racketeer plying his trade in my previous unit. There fellow confined screech and howl, feces are flung, pepper spray permeates the air, and in order to be heard through the thick-glass door, like in most of the prison, one has to shout. This is hardly the opportune environment for voicing prescription questions. However I did broach my clonazepam complaint, and, once more, no one wanted to hear it. No surprise.

Denied grievances may be appealed and addressed to the Area Superintendent/designee within seven (7) days for inmates/residents, ten (10) days for clients.

Responding Staff Signature/ID#: _____ / _____ Date: _____

HCHOC-0085 (2-Part Form): Original-Case file   Yellow Copy-Grievant

Grievance Policy: MI-3.5.2/WCC 3.3.3/PRC 3.4.2/Mill St. 4.1.6 /S35        Rev 02/28/2019

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

## **INMATE REQUEST**

TO: ERIN LAJEUNESSE
FROM: CHRIS REILLY     PERSON #: 176943
DATE: 9-25-25   POD: A3     CELL: 015
REQUEST: Your reply to my clonazepam grievance is unacceptable. You DO dispense scheduled substances — LOADS of them — by the bucketload — day in and out — to doped out heroin junkies. Schedule I opium preparations called methadon and suboxone. Then they sleep all day until they take a hit of fentanyl-coated K2 at night. They come here specifically for this. Show me your policy where you are unable to offer a Schedule IV anxiolytic medication to confined having a valid, legal prescription for it. 2mg, B.I.D., please. LAWSUIT!
INMATE'S SIGNATURE: CReill 9-25-25
RECEIVED BY: ___

---

STAFF RESPONSE:

You are scheduled to meet w/ your prescriber for a routine visit soon. Please discuss your concerns @ that time.

EMPLOYEE NAME/TITLE: ___
DATE: 9/29/25

WHITE - UNIT FILE    YELLOW - INMATE    PINK - KEPT BY INMATE
HCHOC - 0021 (3 PART) 2 - 09

# Grievance Response Report

| | | | | |
|---|---|---|---|---|
| **PersonID:** | 000176943 | | **Type:** | Inmate |
| **Name:** | Christopher Reilly | | **Location:** | A3-015 |
| **Coordinator:** | Erica Rivera-Suttles | 007829 | **Date Received:** | 10/3/2025 |
| **Responder:** | Erin Lajeunesse | 004077 | **Date Responded:** | 10/6/2025 |

**Nature of Complaint**

> (Check One)
> ☒ GRIEVANCE   ☐ APPEAL   ☒ INMATE   ☐ RESIDENT   ☐ CLIENT
>
> Name: CHRISTOPHER B REILLY   Location: A3   Person #: 176943
>
> Did you try to informally resolve your problem with staff? ☒ YES ☐ NO
>
> If yes, list the name of the staff person you talked to: ERIN LAJEUNESSE
>
> NATURE OF COMPLAINT (be brief and specific):
> EVEN IN THE FACE OF CERTAIN LITIGATION, YOU HAVE PASSED THE BUCK ON A SERIOUS MALPRACTICE MATTER. I GAVE YOU THE OPPORTUNITY TO SHOW ME YOUR INMATE-FACING POLICY ON BENZODIAZEPINES THAT ARE PRESCRIBED, AND YOU COPIED AND PASTED RECOMMENDATIONS IN GENERAL FOR G.A.D., WHICH HAVE NO BEARING ON ME. NOT ONLY THAT, BUT ON SEPT. 29, YOU WROTE THAT I AM SCHEDULED TO MEET WITH MY PRESCRIBER, WITHOUT ANY SENSE OF URGENCY AT ALL. WILL THE PRESCRIBER AUTHORIZE A PREVIOUSLY-PRESCRIBED MEDICATION? PLEASE CONTACT ANNMARIE BERNIER, APRN, PA-C : lotesaprn@icloud.com or 860/480-0198.
>
> Signature: Reilly    Date: OCT. 1, 2025

**Response**

As previously informed, it is not practice to start this medication.

Per prescriber referral, you were scheduled for a 12 week follow-up from your last appointment on 8/15/25. Documentation of that encounter was reviewed and no concern of this matter was discussed with the prescriber at that time.

You are strongly encouraged to request the use of respites if you are having difficulty managing in general population. Please notify your clinician if you would like to be scheduled for weekly respites.

# HAMPDEN COUNTY SHERIFF'S DEPARTMENT
## AND CORRECTIONAL CENTER

## INMATE REQUEST

TO: ERIN LAJEUNESSE

FROM: CHRIS REILLY                PERSON #: 176943

DATE: 9-25-25    POD: A3    CELL: 015

REQUEST: Your reply to my clonazepam grievance is unacceptable. You DO dispense scheduled substances — LOADS of them — by the bucketload — day in and out — to doped out heroin junkies. Schedule I opium preparations called methadon and suboxone. Then they sleep all day until they take a hit of fentanyl-coated K2 at night. They come here specifically for this. Show me your policy where you are unable to offer a Schedule IV anxiolytic medication to confined having a valid, legal prescription for it. 2mg, B.I.D., please. LAWSUIT!

INMATE'S SIGNATURE: CReill  9-25-25

RECEIVED BY: _____

---

STAFF RESPONSE: _____

EMPLOYEE NAME/TITLE: _____

DATE: _____

WHITE - UNIT FILE    YELLOW - INMATE    PINK - KEPT BY INMATE
HCHOC - 0021 (3 PART) 2 - 09



# Federal Judge Blocks Georgia Law Banning Treatment for Gender Dysphoria in Prison

Contact: press@ccrjustice.org

Law likely unconstitutional, judge says, ruling on class action lawsuit brought by trans people in Georgia prisons

September 4, 2025, Atlanta – A federal judge today preliminarily blocked a Georgia law prohibiting people in state prisons from receiving treatment for their gender dysphoria, and ordered immediate briefing on whether to enjoin the law permanently. Ruling on a class action lawsuit filed by incarcerated trans people, the judge found that the plaintiffs would be likely to succeed on their claim that Georgia SB185 violates the Eighth Amendment ban on cruel and unusual punishment, and has granted relief to a class of people incarcerated within the Georgia Department of Corrections (GDC) who are seeking treatment for gender dysphoria.

A plaintiff in the case, who asked to be anonymous, said, "To be on hormones but then have them taken away feels like I'm being pushed back into the closet. I experienced joy and freedom, and then to have it taken away, it feels like being in a prison inside the prison."

Signed by Governor Kemp in May and implemented by GDC starting in July, SB185 targets hormone therapy and other forms of gender dysphoria care that doctors, judges, and GDC itself have deemed medically necessary. The law not only prohibits the state from spending money on gender dysphoria care in prison; it also bans incarcerated people from paying for it themselves. Meanwhile, it allows people who are not trans to receive the same treatments, such as hormone therapy, that it denies trans people.

The five plaintiffs, two men and three women, were all diagnosed with gender dysphoria and have been prescribed or are seeking evaluations for treatment. Represented by the Center for Constitutional Rights and lawyers from Bondurant Mixson & Elmore LLP, they brought the suit on behalf of the more than three hundred incarcerated trans people who face catastrophic consequences from the defendants' enforcement of the new law. Withdra

hormone therapy can cause severe medical and psychological problems, from cardiovascular complications to cognitive decline. Cutting off essential care also ensures the return of the conditions that necessitated care in the first place, including severe depression and anxiety, which can lead, in turn, to self-harm and suicide.

In enjoining the law, the judge granted the plaintiffs' motion for a preliminary injunction to restore hormone therapy and treatment evaluations, and said a denial of such treatment is likely to violate the Eighth Amendment. Federal courts have paused enforcement of laws similar to SB185 in other states due to constitutional concerns.

**Judge Victoria M. Calvert** wrote, "At its core, this case is no different from any case challenging prison medical care… when a prisoner presents evidence that the treatment decision was based on something other than medical judgment, and backs it up with uncontroverted expert evidence that the prison's decision put them at a serious risk of harm, the prisoner generally prevails. When properly framed this way, the result here is straightforward."

"GDC's decision to impose a blanket ban on gender dysphoria treatment and forcibly detransition those in its custody is cruel, unusual, and indefensible. GDC already knows that trans people in custody have a constitutionally-protected right to healthcare because, together with Ashley Diamond, I've sued them about this issue twice before," said **Chinyere Ezie, a senior staff attorney at the Center for Constitutional Rights**.

Because of the Diamond lawsuits, for more than a decade prior to the passage of SB185, GDC acknowledged that people with gender dysphoria in its custody are entitled to "constitutionally appropriate" medical care. Two of the defendants, GDC Commissioner Tyrone Oliver and Assistant Commissioner Randy Sauls, adopted and implemented the previous standards of care and related policies, and two other defendants, GDC Statewide Medical Director Marlah Mardis and Centurion of Georgia, LLC, were responsible for providing treatments to incarcerated trans people based on those standards and policies.

For more information, see the case page.

*The Center for Constitutional Rights works with communities under threat to fight for justice and liberation through litigation, advocacy, and strategic communications. Since 1966, the Center for Constitutional Rights has taken on oppressive systems of power, including structural racism, gender oppression, economic inequity, and governmental overreach. Learn more at ccrjustice.org.*

## Hampden County Sheriff's Department

## GRIEVANCE / APPEAL FORM

9/2

(Check One)
☑ GRIEVANCE   ☐ APPEAL

(Check One)
☑ INMATE   ☐ RESIDENT   ☐ CLIENT

Name: REILLY     Location: A3     Person #: 176943

Did you try to informally resolve your problem with staff? ☑ YES  ☐ NO

If yes, list the name of the staff person you talked to: CHRIS, R.N.
GIBBS, C.C.W.

NATURE OF COMPLAINT (be brief and specific):

I REQUESTED THIS AUGUST 7 AND IT IS NOW SEPTEMBER 2. I REQUIRE A "MEDICAL" MATTRESS. THE MATTRESS I SLEEP ON HAS CAUSED MY ELDERLY HIPS AND BUTTOCKS TO DEVELOP WELTS & BED SORES AND MY BACK EXTREME ACHES. IT IS AKIN TO A STEEL TABLE AND IS ACTIONABLE. "CHRIS," R.N., EXAMINED ME AUG. 7, AND PRESCRIBED A MOMENTARY REGIMEN OF NEUTROGENA SOAP AND IBUPROFEN AND SAID HE HAD PUT THE WHEELS IN MOTION FOR A NEW MATTRESS. DESPITE THIS, NOTHING HAS HAPPENED. PLEASE CONSULT WITH HIM. THANK YOU.

Signature: CReilly     Date: SEP. 2, 2025

―――――――――― DO NOT WRITE BELOW THIS LINE ――――――――――

Received by Grievance Coordinator: _____ on _____
                                    Name              Date

### STAFF WRITTEN RESPONSE

Please send the original copy to the Unit Grievance Coordinator:

_____
_____
_____
_____
_____
_____
_____

Denied grievances may be appealed and addressed to the Area Superintendent/designee within seven (7) days for inmates/residents, ten (10) days for clients.

Responding Staff Signature/ID#: _____ / _____ Date: _____

HCHOC-0085 (2-Part Form): Original-Case file   Yellow Copy-Grievant

Grievance Policy: MI-3.5.2/WCC 3.3.3/PRC 3.4.2/Mill St. 4.1.6 /S35          Rev 02/28/2019